## DAVE McINTOSH *v.* THE STATE.

**Larceny — Asportation.**

>  To constitute larceny there must be an asportation of the property.[1]

**Same.**

>  The killing of a hog with intent to carry it away does not constitute larceny. A slight removal is sufficient, but there must be an asportation.

Appellant, Dave McIntosh, was convicted of grand larceny in the Circuit Court of Chickasaw county and sentenced to the penitentiary for two years, and appeals.

---

[1]
To constitute the offense of larceny, the goods must have been taken wrongfully or fraudulently, with intent to convert them to the taker's own use, and make them his own property. If there be no such intention, the taking amounts to a trespass only. If the taking be open, and in the presence of the owner or other persons, this carries with it evidence that it is only a trespass. McDaniel's Case, 8 S. & M. 401.

It is incorrect to charge that "a man who takes property, claiming it for himself or another, commits no larceny," for it is not enough to do away with

On the trial Waites McIntosh testified that early in the morning in September, 1881, he was eating breakfast, and heard a gun fire, and looked up and saw the smoke from the gun, but could see no one; that he afterwards went to look for his hogs, and found one dead in the grass, and it had been shot in the head and dragged a few feet into the grass. He saw some tracks there, but it was so muddy he could not tell anything about them, but he found No. 8 shoe tracks in the woods about one hundred and fifty yards away, leading in the direction of defendant's house, but he did not follow them to the house. Robert Crawford testified that he saw the tracks, and could tell nothing about those near the hog, but in the woods he found No. 8 shoe tracks, the right shoe run down, which he followed to the fence enclosing defendant's house; that defendant went with them, carrying a pair of shoes which he said he wore that day, and the shoes fit the tracks. Amanda Vallent testified that she spent the night before the hog was killed at defendant's house, and early in the morning, between daylight and sunup, defendant took his gun and went away, returning about an hour later.

Defendant denied killing the hog, and stated that he knew nothing of the hog being killed until about dinner time that day, and

the criminal intent, that there should be a mere false claim of property; it must be fair and *bona fide* to have this effect. McDaniel's Case, 8 S. & M. 401.

If a person by color of legal process or other fraudulent means, obtains possession of goods (though with the owner's consent) with the felonious intent to deprive the owner of them, and does in fact so deprive him, it is larceny. Watson's Case, 36 Miss. 593.

It is not essential to the offense of larceny that the taking be *lucri causa;* if fraudulent, with intent to wholly and permanently deprive the owner of the property, it is sufficient. Delk *v.* State, 64 Miss. 77; 1 So. 9.

A furtive and fraudulent taking without claim of right, with intent to deprive the owner of his property, though because of ill-will toward him, and without desire for gain on the part of the taker, is larceny. Hence, where the proof shows that the accused surreptitiously took a mule from the prosecutor, led it into a swamp and killed it, whether the killing was immediate upon the taking, or was afterwards, and for the purpose of concealment, the motive which prompted the taking is immaterial, and there should be a conviction. That the accused in killing the animal was guilty of malicious mischief does not free him from the guilt of larceny in taking it away. Warden *v.* State, 60 Miss. 638.

To constitute larceny of an animal, it is not necessary that it shall be removed from the premises of the owner. To remove it with felonious intent

his wife testified that defendant was at home all the morning and did not leave the house until about dinner time.

Appealed from Circuit Court, Chickasaw county, first district, J. A. Green, Judge.

Reversed and remanded, January 22, 1883.

*Attorneys for appellant, McIntosh & Williams.*

*Attorney for the State, James T. Harris.*

Brief of McIntosh & Williams:

We propose to argue this case, first, upon the sufficiency of the testimony, and in doing so we are not unmindful of the rule of this court in such matters to be as summed up by the chief justice in the Mississippi opinion of this court in the case of Burch & Holbrook v. The State—that "it is in the nature of a demurrer to the evidence, which is held to admit everything which a jury might reasonably infer from the evidence; and the question here is whether, assuming as proven everything which a jury might

from one part of the premises to another, or from the spot in which it was found, is a sufficient asportation. Delk v. State, 64 Miss. 77; 1 So. 9.

Accordingly, proof that one shot another's hog, and turned it upon its back and cut its throat, but did no act toward removing it, will not warrant a conviction of larceny. Williams v. State, 63 Miss. 58.

An instruction that it is larceny for a trespasser to kill a cow with intent to appropriate it without the consent of the owner, is erroneous in ignoring the element of asportation. Alexander v. State, 60 Miss. 953.

In a prosecution for larceny, the evidence showed that defendant was seen at a certain town on the road to the place of larceny, and inquiring the way thereto. About dark he was seen near the house of the property owner. That night certain burglaries occurred, and the owner's horse was taken. The next morning the defendant was seen at the town, where the horse was also found loose, and a bridle and saddle belonging to the owner were found not far from the town. Defendant gave contradictory statements as to where he lived. The court instructed that if the defendant feloniously carried away the horse, without the owner's consent, he should be found guilty, without regard to the distance or place to which he carried the animal, or of the disposition he made of it, or how long the owner was deprived of it. *Held*, that, as the evidence tended to show that defendant took the property without the intent to permanently deprive the owner thereof, the instruction was erroneous. Leland v. State, 33 So. 842.

reasonably have inferred from the evidence, is the verdict thereby supported?. If not, it will be set aside." Presenting the case from that standpoint, we say:

First—Admitting all the testimony offered by the State, and wholly disregarding all the testimony offered by the defendant, that the jury were not justifiable in returning a verdict of guilty, because, to say the least of it, that evidence was not sufficient to convince a reasonable mind beyond a reasonable doubt of the guilt of this defendant (appellant).

Second—When we take into consideration with that the testimony of the woman, Patsy, and to reach a further conclusion we must weigh the whole testimony, then the case falls clearly within the rigid rule laid down in the case above cited.

We do not lose sight of the fact that the jury are the sole judges of the testimony, and have the right, in making up their verdict, to give such weight to the testimony of a witness to which they may think it entitled according to the interest, etc., the witness may have in the result of the suit, wholly disregarding such testimony if they think proper. But, whilst we admit that such is the privilege of the jury, we insist that they can exercise that privilege only when the interested witness is contradicted by some other witness or circumstance clearly proven, and not disregard altogether the testimony of a witness simply because the witness is the wife or relative of the defendant. Otherwise, parties interested in the result of the suit should not be permitted to testify at all. When the testimony of the interested witness is contradictory in itself, or in conflict with that of other witnesses, then, and only then, have the jury the right to disregard it.

Patsy establishes a clear and complete *alibi* for the defendant. Her testimony is not conflicting, but is a straightforward, plain, unvarnished statement of the facts about which she testified, and is not in conflict with that of any other witness, except the woman, Amanda, whose testimony is wholly immaterial, for the reason that, if we admit it to be true, then, according to the testimony of Walter McIntosh, the hog was killed about the time Amanda says Dave left his home, about daylight; and, according to the testimony of Holloman, both State witnesses, the hog was killed about the time Dave returned home, about one hour by sun. Her testimony, therefore, proves nothing.

It is admitted that there was a hog killed, but the only evidence which tends to connect the defendant with it is that some tracks were *found* about 150 yards from the field where the hog was found, in the woods, which his shoe fit, and that these tracks went in the direction of the defendant's house, none of which were followed to his house. The next day after the killing these tracks were followed to his fence, which enclosed his house, but how near to the house the testimony does not disclose. It does show, however, that eight or ten families live in the neighborhood of the defendant, in the direction the tracks went. This is all the testimony material to the issue adduced by the State, except that the shoe of the Rev. Mr. Gidin was measured and found to be of the same size as that found in the woods.

If, instead of being a hog, a man had been found dead in the field where the hog was, and this appellant had been indicted and found guilty of manslaughter and sentenced for life instead of two years in the penitentiary, would this court hesitate to reverse the judgment of the court below? That the defendant in every criminal prosecution is entitled to the benefit of every reasonable doubt that arises in the testimony in the case, and is presumed to be innocent until the contrary is proved, is a grand old principle of the law which has never been changed or altered, even in the case of a negro charged with the larceny of a hog.

Standing upon that principle, we insist that, considering *alone* the testimony of the State's witness, the appellant should not have been convicted, for the case made out by the State was that Waites McIntosh had a hog killed by some unknown party in his field, about 400 yards from his house. The principal witness for the State was Waites, who was contradicted, as to the time he said the hog was shot, by Holloman, another of the State's witnesses. Waites then contradicted himself by saying, first, he and Holloman followed the tracks to the appellant's house, and afterwards, on cross-examination, said they followed them in the direction of the defendant's house, but did not go to the house.

Holloman said, "We did not follow them, for we did not go to the defendant's house." Waites is again contradicted by the State's witness, Crawford, in this. Waites says, "I got Crawford to go with me that day to measure the defendant's tracks." Crawford says, "Waites McIntosh came after me the morning after

the hog was killed," etc. Waites, Holloman, and Crawford *all* said that it was so muddy in the field where the hog was that they could not tell anything about the tracks *there,* but *found* some No. 8 tracks in the woods, about 150 yards from the field in which the hog was found, which led *in the direction* of the defendant's house.

None of the witnesses who examined the tracks and undertook to trace them connected those found in the woods with those found in the field, around and about the hog, except Waites, the prosecutor, in his conflicting and contradictory statements.

Reasonable inference is such an inference or conclusion as the mind, reasoning from the evidence in the case, will reach. Then, in the language of the court in the Mississippi opinion above referred to, assuming as proved everything which the jury may reasonably infer from the evidence, is the verdict supported by it? We insist that it is not.

Verily, it does seem that to accuse is to convict when the parties to the suit are a negro and a hog, when parties are convicted on such testimony as this record discloses. We appreciate the policy of the courts in protecting our live stock from the depredations and theft of idle, thieving negroes by a strict and rigid enforcement of the law, but at the same time we shudder at the thought of one being sentenced to the penitentiary on insufficient testimony, for we believe the experience of ages has strengthened the wisdom of the old maxim "that it is better for ninety-and-nine guilty men to escape than that one innocent one shall suffer."

In the second place, we insist that the court below erred in refusing to give the fifth charge asked by the defendant. It is clearly the law. It certainly devolved upon the State to prove not only that the defendant killed the hog, but that he was prevented from removing it by fear of arrest or detection. The State not only failed to prove it, but wholly failed to show a state of circumstances from which the jury could *reasonably infer* it. The hog was killed 400 yards from the house of the prosecutor. He testified that he could not see any one there from his house, where he was at the time. According to his testimony, it was about daylight in the morning. It was a physical impossibility for him to have seen any one at that time and at that distance, or for any one to have seen him. Yet he said he saw the smoke, but admits that

he could not see any person. He says he did not suspect that his hog was killed; did not go there *immediately,* but finished his breakfast, hitched up his mules to the wagon, and drove there. If the appellant had killed the hog with the intent to convert it to his own use, why didn't he do it? What was to prevent it? No one in sight, no one pursuing, at an unseasonable hour, about daylight. Under the circumstances, it is more *reasonable to infer* that the hog was killed out of a spirit of malicious mischief than for the purpose or intention to convert it to the use of the party who killed it.

The charges given for the State and the defendant were conflicting and contradictory, and must have tended to mislead and confuse the jury, hence erroneous. Cunningham *v.* State, 56 Miss. 269.

The third charge is clearly erroneous, for the reason that it failed to instruct the jury that whatever *belief* they might entertain as to the facts therein charged, their verdict must and should have been founded upon the *evidence in the case.* The jury must be confined to the evidence before them, and not permitted to indulge their suspicions, and even to act upon their private information. Lowenburg *v.* Harper, 5 Cush. 299.

Brief of James I. Harris:

Before considering the sufficiency of the evidence to sustain the verdict, it is proposed to notice very briefly the points of law raised by counsel's brief.

It is urged that the court below erred in refusing charge No. 5 for defendant, and is yet maintained that the court erred in *granting* charges Nos. 1, 3 and 4 for the State, which enunciate the same doctrine insisted upon in the former charge refused, the only difference being that the former charge refused—No. 5—is not applicable to the evidence, in that it assumes that defendant "did not take same (hog) into his possession," while the others are strictly so.

Waites McIntosh testifies that he found one of his hogs dead in the grass; that "it had been shot in the head and looked like it had been stuck with a little barlow knife, and dragged a few steps from where it had been shot into the grass and weeds." This is a sufficient *asportation.* The least removal constitutes an asporta-

tion, as if plate be taken out of a trunk and laid beside it, or the goods be removed from one end of the wagon to another, or an earring be forced by violence from the ear and fall upon the hair. 2 Bishop, § 794, *et seq.;* 3 Greenleaf, § 154; 2 Starkie, § 824; Roscoe's Crim. Ev., 7th Ed., § 624.

The fifth charge, therefore, was not applicable to the evidence, and was, hence, objectionable and properly refused. 3 How. 383; 4 How. 383; Walk. 379.

The third charge for the State is objectionable in not restricting the belief of the jury to such as might arise from the *evidence,* but charges are to be construed together, and if, when so construed together, the law is properly enunciated, the fact that one charge is too broad will not be ground for reversal. Mask's Case, 36 Miss. 77; Evans' Case, 44 Miss. 762.

Is the verdict sustained by the evidence? Waites McIntosh swears that between daylight and sunrise on that day, while eating his breakfast, he heard the report of a gun; that he could see the smoke of the gun about 400 yards from his house, and that, while he could not see the party doing the shooting, the said party could see him distinctly at the house. Afterwards, on investigation, he found one of his hogs dead, shot in the head, with the appearance of having been stabbed with a little barlow knife, and dragged some steps from the place of killing into the weeds and grass. From this point the testimony is generally agreed that the tracks were found about the place of killing, but, owing to the mud, it was impossible to distinguish them until they had been followed about 150 yards away, when it became apparent that the shoe worn was a No. 8, and one of them, the right, run down. From this last point the tracks were followed up to or within a short distance of defendant's house. The shoes of the defendant were compared with the tracks and found to fit exactly.

Amanda Valliant testifies that she spent the night preceding the morning of the larceny at defendant's house, and that he arose about daylight next morning, took his gun, and was gone about an hour by sun in the day. This fact, in connection with the others, is strongly indicative of guilt, but it became almost conclusive when denied by defendant. Why should he deny leaving with his gun about day if his mission was an innocent one? Why did he not prove where he went by credible witnesses, and so

establish an *alibi?* His wife and himself both, it is true, testify that he did not leave the house, but was engaged all the morning riving boards. But the jury have passed adversely upon this testimony and declared their belief of Amanda Valliant, and this court will accept the verdict of the jury upon facts. Mr. Robert Crawford testifies that he looked at the place where he said he had been riving boards, but there was no sign that anything had been rived after the rain.

Ingenious counsel for the defense state that upon the facts disclosed by the record a verdict of guilty in case of homicide would not be sustained. This is not a fair test. Malice is an ingredient of murder, and while a man is presumed to intend the necessary consequence of his acts, and malice will be inferred from the use of a deadly weapon and the fact of the killing, still, in cases which depend entirely upon circumstantial evidence, proof of express malice, if not essential to a conviction, will, when said evidence is not altogether conclusive, greatly strengthen it.

The fact of the *caption* and a sufficient *asportation* are clearly proven. Whether the offense was malicious mischief or larceny depends upon the consideration whether the circumstances proven are such as from which the jury might reasonably infer that defendant abandoned his design, being surprised, or fearing detection, before it was entirely accomplished. It is in proof that defendant could see Waites McIntosh from where he is supposed to have stood, and the jury might, it seems, in reason, infer that he became alarmed at the report of his own gun, and, seeing Waites look around, became alarmed and took to flight.

OPINION.—CAMPBELL, C. J.:

In view of the facts in this case, it was especially important that the law should be accurately announced in the instructions to the jury, and we do not think it was.

Neither the first nor the third instruction for the State correctly defines larceny. Each declares that killing the hog with intent to carry it away constituted larceny, even though there was no *asportation.* Certainly there cannot be larceny without an asportation of the article. True, a slight removal is sufficient, but there must be a change of the site of the chattel to constitute the carrying away necessary to larceny. Probably the contest in

the trial which furnished the occasion for the instruction was as to the circumstance that the hog was not transported from where it was killed to the possession of the thief, but the court should have told the jury that, while it was not necessary to guilt that the hog should have been carried off and appropriated to his use by the taker, it was necessary to constitute larceny that there should have been an *asportation* of the hog, which should have been explained to the jury.

*Judgment reversed,* new trial granted, and cause remanded.